OPINION OF THE COURT
Irving Lang, J.
The defendant’s motion to inspect the Grand Jury minutes raises the issue of whether a person can be charged with murder if he sets a fire in a dwelling and a fireman dies of a heart attack while fighting the fire.
A New York County Grand Jury has indicted the defendant for two counts of arson (second and third degrees) and one count of murder in the second degree. The charges relate to a fire in an apartment of a six-story building in New York City. It is the defendant’s contention that the evidence submitted to the Grand Jury is insufficient to support the third count of the indictment which accuses the defendant of second degree murder based on the felony-murder rule pursuant to subdivision 3 of section 125.25 of the Penal Law.
THE FACTS
The evidence before the Grand Jury established that on June 6, 1980 the defendant started four separate fires in his mother’s apartment on the fifth floor at 215 West 111 Street in New York County. At approximately 4:00 p.m. Engine Co. 47 received a fire alarm and responded to the scene. Smoke was coming from the fifth floor and the building was being evacuated. Fireman Donald Bub was assigned with others to “lay hose” in the building. It *346 was a hot, muggy day. Fireman Bub was in “full firefighter’s garment,” weighing about 30 pounds. There was already some smoke in the lobby. Fireman Bub was carrying about three folds of a 100-foot hose which was required to get to the fire floor. The length of hose carried by Bub weighed about 100 pounds. Fireman Bub was 43 years old and weighed 176 pounds.
In the process of stretching the hose in the first floor lobby fireman Bub collapsed. Cardiopulmonary resuscitation and mouth-to-mouth breathing was immediately instituted. He was then taken to St. Luke’s Hospital where fireman Bub was declared dead.
Dr. Josette J. Montas of the office of the chief medical examiner testified as to the autopsy performed on the deceased. There was no unusual medical finding other than in thé area of the heart. The heart was enlarged and there was evidence of arteriosclerosis of the coronary arteries which are the blood vessels to the heart. This “hardening of the arteries” indicated to the doctor that fireman Bub had progressive heart disease over a period of time, although there was no scarring which would be evidence of a prior heart attack. In addition, there was a relatively fresh occlusion of the lumen of the right coronary artery and evidence of hemorrhage which was the immediate cause of the heart attack. Further, there was some carbon monoxide in the victim’s system. The conclusion as to the cause of death was occlusive coronary arteriosclerosis and thrombosis together with smoke inhalation. The medical examiner testified that while there was no way of ascertaining whether fireman Bub would have had a fatal heart attack had he been otherwise engaged, even resting at home at the time, it was also Dr. Montas’ opinion that the exertion expended by Bub and his inhalation of carbon monoxide could be said “with a reasonable degree of medical certainty” to have contributed to the occurrence and severity of the heart attack.[1]
*347 FELONY MURDER
Subdivision 3 of section 125.25 of the Penal Law provides that: “A person is guilty of murder in the second degree when: * * * (3) [ajeting either alone or with one or more other persons, he commits or attempts to commit robbery, burglary, kidnapping, arson, rape in the first degree, sodomy in the first degree, sexual abuse in the first degree, escape in the first degree, or escape in the second degree, and, in the course of and in furtherance of such crime or of immediate flight therefrom, he, or another participant, if there be any, causes the death of a person other than one of the participants”.
This section, which slightly amended (in 1973 [L 1973, ch 276] and 1974 [L 1974, ch 367]) the new Penal Law (L 1965, ch 1030, eff Sept. 1, 1967), is New York’s version of the felony-murder rule. Derived from the English common law, the rule held that no intent to kill or deliberation or premeditation was required to be established to hold a person guilty of murder if he killed someone during the commission of a felony. The intent to commit the underlying felony is sufficient to sustain a charge of murder even though the defendant did not necessarily intend to kill anyone (People v Wood, 8 NY2d 48). New York’s prior Penal Law (L 1882, ch 384) hardly amended until 1967, declared that it was first degree murder to kill anyone “without a design to effect death, by a person engaged in the commission of, or in an attempt to commit a felony, either upon or affecting the person killed or otherwise” (Penal Law, § 1044, subd 2).
Thus under the former Penal Law any felony or attempt to commit any felony could trigger the application of the felony-murder rule.[2]
Because of the harshness of strict interpretation many States had either statutorily or judicially engrafted “dangerousness” and “foreseeability” requirements before authorizing the invocation of liability under the felony-murder rule. (See What Felonies are Inherently or Foreseeably Dangerous to Human Life for Purposes of Fel *348 any-Murder Doctrine, 50 ALR3d 397; Foreseeability and the Felony-Murder Rule, 24 Ark L Rev 342.)
New York’s new Penal Law drafters, obviously cognizant of many of the criticisms, substantially changed the former rule. Among the changes are:
I. Felony-murder liability was limited to eight specific felonies, all of which can be legitimately classified as inherently dangerous. (Interestingly, since attempt to commit these crimes also creates liability, we have a misdemeanor-murder rule in New York. Two of the crimes, arson in the fourth degree and escape in the second degree, are class E felonies; attempts to commit those crimes are class A misdemeanors [Penal Law, § 110.05, subd 8].)[3]
II. Immediate flight was added to create liability. Under the old law, once the felony was completed, the doctrine could not be invoked even, for example, if a burglar killed a policeman while trying to escape or prevent an arrest (People v Marwig, 227 NY 382; People v Hüter, 184 NY 237).
III. The homicide must be in furtherance of the felony.
Applying the statutory criteria to the instant case, it is clear that the defendant is properly charged with arson and that during the course of the crime fireman Bub, not a participant in the crime, died.
The remaining statutory requirements are that “in furtherance of such crime *** he *** cause[d] the death” of fireman Bub (Penal Law, § 125.25, subd 3).
FURTHERANCE OF SUCH CRIME
What does the statutory phrase “in furtherance of such crime” mean within the context of a felony-murder indictment where arson is the predicate felony? How can we say that in furtherance of the crime of arson the defendant caused the death of fireman Bub? With due deference to the drafters of the new Penal Law and to the Legislature, the phrase is meaningless within the context of an arson homicide. Unlike the seven other *349 crimes which form the predicate for felony-murder indictments, arson is the only one where there is little likelihood of a personal confrontation between the perpetrator and the victim. In all the other felonies death will most likely occur only during or after a direct encounter between the victim and the defendant. Within the context of such encounters it is plausible to require the People to show that the death was caused in furtherance of the felony rather than as a private purpose of the actor. This requirement may be logical where codefendants are involved (cf. People v Blake, 44 AD2d 606). But in the context of an arson case it is meaningless and at best surplusage. To the extent that to apply it to the facts of the instant case would require dismissal of the indictment an absurd result would be created, and no court should interpret statutory language to an absurd result (Williams v Williams, 23 NY2d 592; McKinney’s Cons Laws of NY, Book 1, Statutes, 1970-1971 Pocket Part, § 145).
I hold, therefore, that the requirement that the act causing death be in furtherance of the crime of arson is neither comprehensible nor applicable to the instant case.
CAUSALITY
The final and critical requirement is that it be shown that the defendant’s felonious act caused the death of fireman Bub.
In any homicide prosecution, in any degree, the" prosecution must prove beyond a reasonable doubt that the accused caused the death of the deceased. (People v Brengard, 265 NY 100.)
However, through a long line of cases our Court of Appeals has held that criminal liability for death does not require that the defendant’s action be the sole and immediate cause of death. Rather it is sufficient that the defendant’s conduct forged a direct link in a chain of events which brought about the death.
Thus, as far back as 1880 the Court of Appeals held that it “was not necessary in order to convict the pris *350 oner that it should appear that his actual personal violence was the sole and immediate cause of the death of the deceased. If his violence so excited the terror of the deceased that she died from the fright, and she would not have died except for the assault, then the prisoner’s act was in law the cause of her death.” (Cox v People, 80 NY 500, 516.)
In People v Kane (213 NY 260, 277), the Court of Appeals upheld the homicide conviction of a defendant who shot a pregnant woman even though claimed negligent treatment at a hospital “may also have had some causative influence”. The court did say, however, that if the death was solely attributable to the secondary agency, and not at all induced by the primary one, then there would be a defense to the charge.
Our highest court adopted this latter reasoning in People v Stewart (40 NY2d 692) and set aside a manslaughter conviction where having successfully operated on a stabbing victim for his wound the medical team decided to operate on a hernia unrelated to the stabbing. During that part of the surgery the defendant suffered severe heart failure and massive brain damage, and died shortly thereafter. It was established that had the hernia operation not been performed the victim would probably have survived the operation. There also was some indication of gross negligence on the part of the anesthesiologist in failure to provide oxygen to the patient. In light of these attenuating factors the court concluded that the death had not been caused by the defendant beyond a reasonable doubt, and reduced the manslaughter conviction to assault in the first degree.
Finally, in People v Kibbe (35 NY2d 407 [preceding Stewart, supra]), the Court of Appeals upheld a murder conviction, where the defendants abandoned their helplessly intoxicated robbery victim, without shoes or eyeglasses in subfreezing temperature by the side of a dark road, with outer clothing removed despite the fact that the direct cause of the victim’s death was the fact that he was hit by a truck. In sustaining a conviction of murder under subdivision 2 of section 125.25 of the Penal Law (depraved indifference to human life), the court held that *351 the defendants’ actions were a “sufficiently direct cause” of death to warrant criminal liability.
In addition to these rulings of the Court of Appeals, a feloniously induced heart attack had long been recognized as a proper predicate for a felony-murder prosecution.
In People v Stamp (2 Cal App 3d 203, cert den 400 US 819), the California Court of Appeals affirmed convictions of first degree murder resulting from the death of an amusement company manager who died of a heart attack soon after the company had been robbed by the defendants. The court pointed out that robbery was inherently dangerous to human life and that the felony-murder rule applied regardless of the foreseeability of the victim’s death.
More recently in New York, the Appellate Division, Second Department, upheld a felony-murder conviction where moments after being robbed the victim experienced symptoms of a heart attack and died the following day. The court stated that the evidence “clearly established that the defendant’s conduct caused the victim’s death”. (People v Roberts, 73 AD2d 954.)
Of course, in all the above cases there was a direct confrontation between the defendant and the victim. But, as noted previously, that situation would be rare in any arson case. Perhaps more than any other felony in the statute, arson is inherently dangerous to human life.
That fireman Bub had a previous weakened heart is of no legal consequence. The fact that a victim is particularly vulnerable does not exempt the perpetrator from responsibility. Firemen are in a constant state of vulnerability. They are subject to death from flames, smoke, falling beams, collapsing walls, and failing ropes. That a heart should fail is manifestly foreseeable. That fireman Bub might have met a similar fate from natural or accidental fires does not insulate the arsonist against homicide liability for the fire deliberately ignited. The evidence before the Grand Jury establishes a direct spa *352 tio-temporal nexus between the fire and the death sufficient to warrant holding the defendant for a trial by jury on the charge of murder.

. The District Attorney is directed to give a copy of the medical examiner’s Grand Jury testimony to defense counsel. (Brady v Maryland, 373 US 83.)

. Subdivision 3 of section 1044 of the former Penal Law created specific liability for arson in the first degree, which the Court of Appeals found incomprehensible in the light of subdivision 2 nor would it qualify subdivision 2 (People v Greenwall, 115 NY 520, 523).

. Under sections 260 through 262 of the previous Penal Law, all attempts to commit felonies were felonies.