STATE OF CONNECTICUT *v.* JAMES YOUNG
(10792)

PETERS, HEALEY, PARSKEY, SHEA and GRILLO, Js.

Argued October 11—decision released December 27, 1983

*John R. Williams,* with whom, on the brief, was *Sue L. Wise,* for the appellant (defendant).

*Julia D. Dewey,* assistant state's attorney, with whom, on the brief, were *Arnold Markle,* state's attorney, *Mary M. Galvin,* assistant state's attorney, and *Lawrence J. Fossi,* law student intern, for the appellee (state).

SHEA, J. After a jury trial the defendant was found guilty of felony murder in violation of General Statutes § 53a-54c[1] and of arson in the first degree in violation of General Statutes § 53a-111 (a).[2] In his appeal from that judgment he claims error: (1) in the instructions to the jury explaining the phrase "and in furtherance of such crime" as used in § 53a-54c; (2) in the allowance of an amendment during trial to the information charging arson in the first degree; (3) in the charge upon the presumption of sanity; (4) in the denial of a motion to suppress confessions of the defendant claimed to have resulted from his unlawful seizure by the police at his home; (5) in the failure to exclude certain testimony indicating that the defendant was incarcerated before and during trial; and (6) in the failure of his trial attorney to render him effective assistance of counsel. We find no error.

[1] At the time of the offense, March 2, 1979, General Statutes (Rev. to 1979) § 53a-54c provided as follows: "Sec. 53a-54c. FELONY MURDER. A person is guilty of murder when acting either alone or with one or more persons, he commits or attempts to commit robbery, burglary, kidnapping, arson, sexual assault in the first degree, sexual assault in the first degree with a firearm, sexual assault in the third degree, sexual assault in the third degree with a firearm, escape in the first degree, or escape in the second degree and, in the course of and in furtherance of such crime or of flight therefrom, he, or another participant, if any, causes the death of a person other than one of the participants, except that in any prosecution under this section, in which the defendant was not the only participant in the underlying crime, it shall be an affirmative defense that the defendant: (A) Did not commit the homicidal act or in any way solicit, request, command, importune, cause or aid the commission thereof; and (B) was not armed with a deadly weapon, or any dangerous instrument; and (C) had no reasonable ground to believe that any other participant was armed with such a weapon or instrument; and (D) had no reasonable ground to believe that any other participant intended to engage in conduct likely to result in death or serious physical injury."

[2] At the time of the offense, March 2, 1979, General Statutes (Rev. to 1979) § 53a-111 (a) provided as follows: "Sec. 53a-111. ARSON IN THE FIRST DEGREE: CLASS B FELONY. (a) A person is guilty of arson in the first degree when, with intent to destroy or damage a building, he starts a fire or causes an explosion, and (1) at the time, another person is present in such build-

There is little dispute about the circumstances of the fire which resulted in the death of one victim and in serious injuries to another. On March 2, 1979, at 11 p.m. the New Haven fire department responded to a report of a fire at a three story apartment building on Hallock Street in New Haven. In the course of extinguishing the blaze, the firemen discovered in the building the body of a three year old child, Keiya McDuffie, whose death had resulted from inhaling smoke and carbon monoxide during the fire. Robert Smith, who occupied one of the apartments, was seriously injured when he jumped from the building to escape the flames. An investigation indicated that the fire had been started by the use of an accelerant, such as gasoline. The defendant, who had been seen near the apartment building just before the fire broke out, ultimately confessed that he had ignited it at the request of the owner, Morris Sacks, who had promised to pay him $10,000 for his services. At the trial the defendant testified in his own behalf, repudiating his confessions and denying any involvement in setting the fire.

## I

At the time of the offense General Statutes (Rev. to 1979) § 53a-54c imposed liability for felony murder upon a person "when acting either alone or with one or more persons, he commits or attempts to commit . . . arson . . . and, in the course of and in furtherance of such crime or of flight therefrom, he, or another participant, if any, causes the death of a person other than one of the participants . . . ." The defendant claims that the phrase "and in furtherance of such crime or of flight therefrom" imposes a requirement of mens rea in the

ing or is so close to such building as to be in substantially the same danger as a person in such building would be, and (2) the actor is either aware that a person is present in or close to such building, or his conduct manifests an indifference as to whether a person is present in or close to such building."

form of a specific intent or scienter with respect to the death itself. He argues that "furtherance" means "promotion" or "advancement" and does not imply merely a causal relationship between the underlying felony and the death, as the trial court assumed. In charging the jury the court equated "in furtherance of" with "in the natural progression of."[3] The defendant contends not only that the charge was erroneous,[4] but also that his motion for an acquittal should have been granted because of the lack of any evidence that the death of the child victim aided or facilitated the commission of the arson.

Despite the linguistic appeal of the defendant's argument,[5] it ignores both the history and purpose of the "in furtherance" phrase in § 53a-54c. This section of

[3] This portion of the charge was as follows: "The third element of the crime which the State must also prove beyond a reasonable doubt is that the defendant or another participant in the alleged crime caused the death of Keiya McDuffie in the course of and in furtherance of an arson or of flight therefrom. I have already discussed the crime of arson. Such a crime is likely to involve danger to life since in the course of its commission and in furtherance of or in the natural progression of it, the death of an innocent person may be caused. This element requires that you must find beyond a reasonable doubt that the State has proved that the death of Keiya McDuffie resulted in the course of and in furtherance of the crime of arson by this defendant or by another participant in the crime."

[4] In his brief appellate counsel for the defendant has erroneously assumed that no exception to this portion of the charge was taken by trial counsel and seeks consideration of this claim of error under *State* v. *Evans,* 165 Conn. 61, 327 A.2d 576 (1973). The transcript indicates that trial counsel did except in accordance with Practice Book § 854.

[5] The defendant relies upon a statement in *State* v. *MacFarlane,* 188 Conn. 542, 551–52, 450 A.2d 374 (1982), that "the phrase 'in furtherance of' could properly be considered by the jury in its ordinary meaning," citing General Statutes § 1-1 (a). That statute provides: "In the construction of the statutes words and phrases shall be construed according to the commonly approved usage of the language; and technical words and phrases, and such as have acquired a peculiar and appropriate meaning in the law, shall be construed and understood accordingly." As this opinion explains, we regard the "in furtherance of" phrase in General Statutes § 53a-54c as having "acquired a peculiar and appropriate meaning in the law." In *MacFarlane*

our penal code was taken from the New York code[6] and deviates substantially from the recommended felony murder provisions of the Model Penal Code,[7] the source of many other portions of both the Connecticut and New York codes. Faced with a claim that "in furtherance of" meant "in aid of" or "in advancement of," the New York courts have construed the phrase to impose the requirement of a logical nexus between the felony and the homicide. *People* v. *Lewis,* 111 Misc. 2d 682, 686, 444 N.Y.S. 2d 1003 (1981). "More than the mere coincidence to time and place . . . the nexus must be one of logic or plan. Excluded are those deaths which are so far outside the ambit of the plan of the felony and its execution as to be unrelated to them." Id. The phrase was viewed as incorporating into the New York felony murder provision the previous limitation upon the applicability of the felony murder rule adopted in *People* v. *Wood,* 8 N.Y.2d 48, 167 N.E.2d 736; 201 N.Y.S.2d 328 (1960). In that case, where the defendant had been indicted for the deaths of an accomplice as well as of an innocent bystander in a gun battle with the police, both of whom were shot by a tavern

---

we did not explain the meaning of "in furtherance of" as used in General Statutes § 53a-54c. We found no error, however, in a jury instruction which combined "in the course of and in furtherance of" by using the phrase "as a result of" following several recitals of the statutory language. That causal connotation of "in furtherance of," which we approved in *MacFarlane,* is not essentially different from that implied by the words "in the natural progression of" used by the trial court in this case. In sustaining its burden of proof the state must establish this causal element as well as the temporal element inherent in the phrase "in the course of."

[6] Report of the Commission to Revise the Criminal Statutes (1971).

[7] The Model Penal Code, § 210.2 provides in part as follows: "(1) Except as provided in Section 210.3 (1) (b), criminal homicide constitutes murder when: . . . (b) it is committed recklessly under circumstances manifesting extreme indifference to the value of human life. Such recklessness and indifference are presumed if the actor is engaged or is an accomplice in the commission of, or an attempt to commit, or flight after committing or attempting to commit robbery, rape or deviate sexual intercourse by force or threat of force, arson, burglary, kidnapping or felonious escape . . . ."

owner who was assisting the police, the court upheld the dismissal of the indictment. "A felony murder embraces not any killing incidentally coincident with the felony . . . but only those committed by one of the criminals in the attempted execution of the unlawful end . . . . Although the homicide itself need not be within the common design . . . the *act* which results in death must be in furtherance of the unlawful purpose." Id., 51.

We agree with the New York courts that the phrase "in furtherance of" was intended to impose the requirement of a relationship between the underlying felony and the homicide beyond that of mere causation in fact, similar to the concept of proximate cause in the law of torts. Primarily its purpose was to limit the liability of a person whose accomplice in one of the specified felonies has performed the homicidal act to those circumstances which were within the contemplation of the confederates to the undertaking, just as the liability of a principal for the acts of his servant is similarly confined to the scope of the agency. "All who join in a common design to commit an unlawful act, the natural and probable consequence of the execution of which involves the contingency of taking human life, are responsible for a homicide committed by one of them while acting in pursuance of, or *in furtherance of,* the common design. . . ." (Emphasis added.) *State* v. *McCarthy,* 133 Conn. 171, 173, 49 A.2d 594 (1946), quoting 29 C.J. 1073; *State* v. *Rossi,* 132 Conn. 39, 44, 42 A.2d 354 (1945); *State* v. *Cots,* 126 Conn. 48, 59, 9 A.2d 138 (1939).

Prior to the advent of the penal code in 1971, our criminal statutes contained no express provision imposing liability for a homicide committed by an accomplice in the course of a felony. The first degree murder statute included within that classification a killing which

occurred in the perpetration of any arson, rape, robbery or burglary, or injury to any person or property by means of any explosive compound, but it referred only to the actual perpetrator of the felony. Vicarious liability for such a murder, nevertheless, could be imposed upon an accomplice by virtue of the general accessory liability statute. General Statutes § 54-196; see *State* v. *Leopold,* 110 Conn. 55, 63, 147 A. 118 (1929). The "in furtherance" phrase had frequently been used to define the scope of the criminal liability of one participant in a crime for the actions of another or of a principal for conduct of his agent. See *State* v. *McCarthy,* supra, 173; *State* v. *Rossi,* supra, 44; *State* v. *Cots,* supra, 59; cf. *Robinson* v. *Dobbins,* 108 Conn. 58, 61, 142 A. 572 (1928); *Cooke* v. *Weed,* 90 Conn. 544, 550, 97 A. 765 (1916). In enacting § 53a-54c, which combines in one sentence the imposition of liability for murder upon the actor who actually causes a death in the commission of a specified felony and also the imposition of such liability upon other participants in that underlying felony, it was entirely appropriate for the legislature to include this standard language for restricting the extent of such vicarious liability.

In addition to its function in defining the scope of accomplice liability, the "in furtherance" phrase also may serve, where only a single actor is involved, to exclude those murders which, while committed during the course of an underlying felony, are wholly unrelated to the commission of that crime. See *United States* v. *Bolden,* 514 F.2d 1301, 1307 (D.C. Cir. 1975); *United States* v. *Heinlein,* 490 F.2d 725, 733 (D.C. Cir. 1973); *People* v. *Wood,* 8 N.Y.2d 48, 167 N.E.2d 736; 201 N.Y.S.2d 328 (1960). The trial court's reference to the "natural progression" of the crime as the milieu in which the murder must occur appears to have been intended to convey this causal limitation upon the

applicability of § 53a-54c in addition to the temporal limitation implied by the phrase "in the course of."

The defendant has referred to the 1979 amendments to the penal code which removed arson as one of the felonies designated in § 53a-54c and created a separate crime of "arson murder" by the enactment of General Statutes § 53a-54d.[8] He claims that the omission of the "in furtherance" phrase from the arson murder statute effected a substantive change in the law which cannot be applied retroactively. The trial court did not, however, ignore the "in furtherance" requirement in charging the jury, as the defendant contends. The charge gave it sufficient emphasis at least in the absence of a request for a more refined treatment of the subject, and properly confined its import under the circumstances of this case to the element of causation. We view the omission of the "in furtherance" language from our recently enacted arson murder statute not as an indication that this phrase should be interpreted as the defendant contends, but as a legislative recognition that when the arsonist himself causes a death during the course of committing that crime it would be a rare case where the death would not also be "in furtherance" of the arson. See *People* v. *Lozano,* 107 Misc. 2d 345, 349, 434 N.Y.S.2d 588 (1980).

## II

The defendant claims that an amendment to the information charging arson in the first degree, which was filed during trial without objection, violated his constitutional rights in such fashion as to warrant our con-

[8] General Statutes § 53a-54d provides as follows: "A person is guilty of murder when, acting either alone or with one or more persons, he commits arson and, in the course of such arson, causes the death of a person. Notwithstanding any other provision of the general statutes, any person convicted of murder under this section shall be punished by life imprisonment and shall not be eligible for parole."

sideration of this claim of error under the exceptional circumstances doctrine of *State* v. *Evans,* 165 Conn. 61, 70, 327 A.2d 576 (1973). We review the claim only to the extent of determining whether the defendant's right to fair notice of the charge against him was violated. See *State* v. *McCalpine,* 190 Conn. 822, 828, 463 A.2d 545 (1983). The amendment inserted the name of the person, Robert Smith, whom the original information alleged to have been "present in or close to" the building at the time the fire was started. The grand jury indictment referred to Keiya McDuffie as the victim whose death had resulted from the arson. The contention of the defendant is that, because Keiya McDuffie was the only person named in the indictment, he could reasonably assume that the reference in the original information to a person "present in or close to" the building also applied to Keiya McDuffie alone.

There is nothing in the record which would have warranted any assumption by the defendant that the information charging arson in the first degree referred only to the victim named in the indictment. If the further claim of the defendant were correct that arson in the first degree, under the circumstance that Keiya McDuffie was the person alleged to be in the building, would have constituted a lesser offense included in the felony murder charge of the indictment,[9] the filing of

[9] Arson in the first degree in 1979 required not only the presence of another person in the building or in close proximity to it but also an awareness of such presence or conduct manifesting an indifference thereto. General Statutes (Rev. to 1979) § 53a-111 (a). No such mental element was necessary for second or third degree arson. General Statutes (Rev. to 1979) §§ 53a-112, 53a-113. Because any of the three degrees of this offense qualified as the predicate felony of arson in General Statutes § 53a-54c for the crime of felony murder, it is possible to commit that crime without also committing arson in the first degree. The defendant's claim that the felony murder charge in the indictment would include the charge of arson in the first degree, which requires the mental element of awareness or indifference, therefore, is unsound. *State* v. *Whistnant,* 179 Conn. 576, 584, 427 A.2d 414 (1980).

the separate arson charge would have been contrary to our standard practice; and the defendant should have realized from the filing of the separate charge of arson in the first degree that a different victim was referred to in the information. Furthermore, the failure of the defendant to seek clarification of the indefinite reference in the information to "another person" in the building by a motion for a bill of particulars in accordance with Practice Book § 831 constitutes a waiver of such deficiency. *State* v. *Carbone,* 172 Conn. 242, 258, 374 A.2d 215, cert. denied, 431 U.S. 967, 97 S. Ct. 2925, 53 L. Ed. 2d 1063 (1977). We have no reason to assume that if such a motion had been made before trial it would have resulted in the naming of anyone but Robert Smith as the victim of the first degree arson. The record is wholly devoid of any indication of actual surprise on the part of the defendant, no objection to the filing of the amendment having been raised at trial. In addition, the only prejudice which the defendant claims to have resulted from his asserted misapprehension of the identity of the victim of the arson is based upon the contention we have rejected:[10] that the felony murder indictment would include the arson charge as a lesser offense if the only victim of both crimes were Keiya McDuffie. The allowance of the amendment during trial fell within the discretion of the court to permit amendments "if no additional or different offense is charged and no substantive rights of the defendant would be prejudiced." Practice Book § 624. A fortiori, the claim of the defendant that his constitutional right to fair notice of the charge against him was violated must be rejected.

## III

The basis for the next claim of error is the charge to the jury that the presumption of sanity was applica-

---

[10] See footnote 8, supra.

ble to satisfy the state's burden of proving that the defendant was of sound mind when he committed the crime.[11] Although the defendant concedes that he never gave notice of any insanity defense, as required by Practice Book § 758,[12] he claims that when sanity is identified as an element to be proved by the state no presumption can operate to relieve the state of its burden of presenting evidence to prove that or any other element of an offense beyond a reasonable doubt. Recognizing that no exception was taken to this charge, the defendant purports to assert this contention also as a constitutional claim entitled to review pursuant to *State* v. *Evans,* supra, 70. See *Sandstrom* v. *Montana,* 442 U.S. 510, 99 S. Ct. 2450, 61 L. Ed. 2d 39 (1979); *State* v. *Avcollie,* 188 Conn. 626, 638–39, 453 A.2d 418 (1982), cert. denied, 461 U.S. 928, 103 S. Ct. 2088, 77 L. Ed. 2d 299 (1983); *State* v. *Cosgrove,* 186 Conn. 476, 442 A.2d 1320 (1982); *State* v. *Truppi,* 182 Conn. 449, 438 A.2d 712 (1980), cert. denied, 451 U.S. 941, 101 S. Ct. 2024, 68 L. Ed. 2d 329 (1981).

In *Leland* v. *Oregon,* 343 U.S. 790, 72 S. Ct. 1002, 96 L. Ed. 1302 (1952), a state statute which imposed upon a defendant the burden of proving his defense of

---

[11] This portion of the charge was as follows: "The fourth element which the State must also prove beyond a reasonable doubt is that the defendant was of sound mind. The law presumes that an accused was of sound mind at the time of an incident on which a charge is based unless there is some credible evidence tending to prove the contrary. In this case no such evidence has been introduced and the presumption of sanity controls. You are instructed that this element has been proved."

[12] "[Practice Book] Sec. 758. —— ——NOTICE BY DEFENDANT

If a defendant intends to rely upon the defense of mental disease or defect at the time of the alleged crime, he shall, within the time provided for the filing of pretrial motions pursuant to Sec. 811 or at such later time as the judicial authority may direct, notify the prosecuting authority in writing of such intention and file a copy of such notice with the clerk. If there is a failure to comply with the requirements of this section, mental disease or defect may not be raised as a defense. The judicial authority may for cause shown allow late filing of the notice or grant additional time to the parties to prepare for trial or make such other order as may be appropriate."

insanity beyond a reasonable doubt was found to violate no constitutional right. The continuing viability of this decision was confirmed in *Rivera* v. *Delaware,* 429 U.S. 877, 97 S. Ct. 226, 50 L. Ed. 2d 160 (1976), where a challenge to a statute making insanity an affirmative defense to be proved by a fair preponderance of the evidence was dismissed for lack of a substantial federal question. We see no basis, therefore, for questioning the validity of the notice of insanity defense requirement of Practice Book § 758, which does not alter our practice of imposing the burden upon the state to prove sanity beyond a reasonable doubt once the issue has been properly raised by the filing of a seasonable notice and by presenting substantial evidence tending to prove insanity. *State* v. *Conte,* 157 Conn. 209, 212, 251 A.2d 81, cert. denied, 396 U.S. 964, 90 S. Ct. 439, 24 L. Ed. 2d 428 (1969).

We are also unable to discern any constitutional underpinning for an additional claim of the defendant that there was sufficient evidence at the trial to overcome the presumption of sanity. Even if the testimony of the psychiatrists concerning the defendant's chronic alcoholism, low mentality, depression, anxiety and mild paranoia, which appears to have been presented in support of his claim that his confessions were inadmissible, could be viewed as sufficient to raise the insanity defense,[13] the failure to comply with § 758, as well as the absence of any exception to the charge as given, would indicate that the defendant had elected not to raise any insanity defense. Since a successful assertion of that defense involves the serious consequence of a

[13] None of the psychiatrists expressed any opinion concerning whether the defendant at the time of the offense "lacked substantial capacity as a result of mental disease or defect either to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law." General Statutes § 53a-13.

substantial deprivation of liberty, for a court to have injected that defense when the record indicated no desire on the part of a defendant to do so would raise a serious constitutional question indeed. We can perceive no merit in the present constitutional challenge to the reliance upon the presumption of sanity where a defendant has never intimated any intention of relying upon the insanity defense.

## IV

The defendant next claims that the police seized him unlawfully at his home to bring him to the police station and that his subsequent confessions resulting from this violation of his constitutional rights should be suppressed. See *Dunaway* v. *New York,* 442 U.S. 200, 99 S. Ct. 2248, 60 L. Ed. 2d 824 (1979). At trial the defendant also maintained that his confessions were involuntary and had not been obtained in compliance with the requirements of *Miranda* v. *Arizona,* 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966), but these issues have not been pursued on appeal.

On the morning after the fire two New Haven police department detectives, Anthony DiLillo and J. T. Butler, began a "neighborhood check" as part of the investigation of the fire in the Hallock Street apartment building. In the course of interviewing numerous people in the vicinity, they met a woman who reported that she had seen a black man running down Hallock Street shortly before the fire broke out. She did not know the man's name, but she recognized him as an employee of Morris Sacks, the owner of the building. After receiving this information, the police contacted Morris Sacks and obtained the name of the defendant.

At about 9:30 a.m. officers DiLillo and Butler, who were not in uniform, went to the apartment where the

defendant resided. They informed the woman who came to the door that they were police officers and asked to see the defendant. When the defendant appeared, he invited the detectives into the apartment. They explained that they were interviewing everybody who had been at the building on Hallock Street where the fire occurred and asked the defendant to come to the detective bureau because they were taking statements from everyone who had been at the building on the day of the fire. When the defendant inquired about transportation to and from the police station, the officers said they would bring him there and also return him to his home. The defendant rode to the police station in the back seat of an unmarked police car while the two detectives occupied the front seat.

Upon arrival at the police station the defendant was brought to a room where another detective, Joseph Reynolds, read the standard *Miranda* warning to him from a printed card. He said that he understood his rights and signed the card so to indicate. Reynolds testified that he advised the defendant on three separate occasions that he was not under arrest and was free to leave the detective bureau. The defendant replied that he was aware of this fact but wanted to cooperate. Initially the defendant denied any participation in or knowledge of the Hallock Street fire.

The defendant was not questioned continuously and was permitted to smoke cigarettes while he waited. About midnight commander Louis Ranciato arrived and at approximately 12:30 a.m. began to interview the defendant in his office in the presence of detective DiLillo. Ranciato told the defendant that he had been seen on Hallock Street on the night of the fire. During the conversation which followed, the defendant admitted that he had ignited the fire at the direction of his employer, Morris Sacks. At about 2:30 a.m. a tape

recording was made of the defendant's confession. After the recording was completed, the defendant signed a form consenting to the search of his apartment. Later that morning the defendant gave the police two more confessions which were recorded on tape. A fourth confession was similarly recorded while the defendant was at the Bridgeport jail and an investigator engaged by his attorney was present.

It is well established that a confession obtained through custodial interrogation following an illegal arrest should be excluded unless intervening events break the causal connection between the arrest and the confession. *Taylor* v. *Alabama,* 457 U.S. 687, 102 S. Ct. 2664, 73 L. Ed. 2d 314 (1982); *Dunaway* v. *New York,* 442 U.S. 200, 216, 99 S. Ct. 2248, 60 L. Ed. 2d 824 (1979); *Brown* v. *Illinois,* 422 U.S. 590, 600–604, 95 S. Ct. 2254, 45 L. Ed. 2d 416 (1975). The state does not dispute this principle but contends that no arrest or seizure of the defendant occurred prior to the time of his first confession, which provided probable cause to detain him thereafter. We agree with the state's position and, therefore, need not consider whether the information possessed by the police before the defendant came to the police station would support a finding of probable cause.

"[A] person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *United States* v. *Mendenhall,* 446 U.S. 544, 553–54, 100 S. Ct. 1870, 64 L. Ed. 2d 497 (1980); *State* v. *Acquin,* 187 Conn. 647, 655, 448 A.2d 163 (1982), cert. denied, 463 U.S. 1229, 103 S. Ct. 3570, 77 L. Ed. 2d 1411 (1983); *State* v. *Ostroski,* 186 Conn. 287, 291–92, 440 A.2d 984, cert. denied, 459 U.S. 878, 103 S. Ct. 173, 74 L. Ed. 2d 142 (1982); *State* v. *Derrico,* 181 Conn. 151, 159, 434 A.2d 356, cert. denied, 449 U.S. 1064,

101 S. Ct. 789, 66 L. Ed. 2d 607 (1980). In *State* v. *Acquin,* supra, 656, we held that a defendant who voluntarily agreed to accompany officers to police headquarters, where he was interrogated for about four and a half hours, had not been "seized." We reached a similar result in *State* v. *Derrico,* supra, 161, concluding that the defendant could not reasonably have understood the invitation of the police to come to headquarters as an implied arrest. In *Acquin* there was credible evidence that, when the defendant requested to go home, the interrogation ceased and the police began to drive him to his home. In *Derrico* the police had testified that the defendant was told during the trip to police headquarters and again when he arrived there that he was free to leave. Like *Derrico,* in the present case there also was substantial evidence that the defendant was informed while he remained at the police station that he could return home. He made no such request at any time. Cf. *State* v. *Ostroski,* supra, 293–94. No physical restraint was placed upon him, and, except for intermittent questioning during the two hour period before Ranciato arrived, he appears to have been left alone sitting just outside Ranciato's office. Under all the circumstances we cannot conclude that the trial court was clearly erroneous in finding that the defendant had not been "seized" prior to his confessions and in admitting them into evidence.

## V

The remaining claims of error require no extended discussion.

During the trial several witnesses, in responding to other inquiries, made reference to the detention of the defendant at the Bridgeport jail since his arrest. No objection was voiced to such testimony and trial counsel for the defendant elicited the fact of his incarceration when the defendant testified in his own behalf. Nevertheless, the claim is raised on appeal that these

references deprived the defendant of a fair trial by undermining the presumption of innocence and the fairness of the factfinding process. See *Estelle* v. *Williams,* 425 U.S. 501, 96 S. Ct. 1691, 48 L. Ed. 2d 126 (1976). Arrayed in such constitutional attire, this ground of error is urged as an exceptional circumstance entitled to appellate review despite the absence of objection in the trial court. See *State* v. *Evans,* supra, 70. In *Estelle* v. *Williams,* supra, 508, where it was held that a defendant may not constitutionally be tried in prison garb over his timely objection, it was expressly recognized that such an objection was essential because a court might otherwise reasonably assume that the defendant chose to bring forth the fact of his incarceration to arouse sympathy or for some other strategic purpose. On those occasions when this court has reviewed similar claims of error there was a proper objection in the trial court. *State* v. *Hawthorne,* 176 Conn. 367, 371, 407 A.2d 1001 (1978); *State* v. *Yates,* 174 Conn. 16, 18, 381 A.2d 536 (1977). Because of the absence of any objection in the trial court, therefore, this claim of the defendant does not qualify for further review. Practice Book § 3063.

As his final claim of error the defendant has presented a litany of alleged deficiencies on the part of his trial counsel which, he contends, require a finding of ineffective assistance of counsel. Some of the matters raised, as appellate counsel concedes, would require an evidentiary hearing to develop the essential facts relied upon. Even those failures which the record might support cannot be properly evaluated simply by perusing the transcript. "[W]e are reluctant to resolve this kind of claim upon a direct appeal rather than after a habeas corpus proceeding where facts and circumstances often not disclosed by a trial transcript can be fully developed and the lawyer who represented

the defendant at trial can be heard from." *State* v. *Orsini,* 187 Conn. 264, 280, 445 A.2d 887 (1982); *State* v. *Mason,* 186 Conn. 574, 578–80, 442 A.2d 1335 (1982); *State* v. *Just,* 185 Conn. 339, 370–71, 441 A.2d 98 (1981); *State* v. *Barber,* 173 Conn. 153, 154–55, 376 A.2d 1108 (1977).

There is no error.

In this opinion HEALEY, PARSKEY and GRILLO, Js., concurred.

PETERS, J. (dissenting). The principal issue in this case is the proper construction of General Statutes § 53a-54c which requires the state to prove that someone charged with a felony murder "in the course of and in furtherance of such crime or flight therefrom . . . cause[d] the death of a person . . . ." Because I disagree with the majority's construction of this statutory language, I must dissent from the affirmance of the defendant's conviction.

The majority opinion concludes that the phrase "in furtherance of" in § 53a-54c means proximate cause, or less. The primary purpose of the statutory language, according to the majority, is to limit the vicarious liability of a principal when an accomplice commits a homicidal act beyond the scope of the contemplated underlying felony. For cases involving vicarious criminal liability, the phrase "in furtherance of" thus imposes the requirement of a relationship beyond that of mere causation in fact, a requirement analogous to that of proximate cause in the law of torts. This requirement was adequately communicated to the jury, in the view of the majority, by the trial court's equation, in its instructions, of "in furtherance of" with "in the natural progression of." For cases not involving vicarious criminal liability, however, when the underlying felony is the crime of arson, the majority relies upon

the construction of a similar statute by New York courts, which have held the phrase "in furtherance of" to be "meaningless and at best surplusage." *People* v. *Lozano,* 107 Misc. 2d 345, 349, 434 N.Y.S.2d 588 (1980). Because the present criminal proceedings arose out of a charge of direct liability for a death that occurred in the course of and in furtherance of the crime of arson, the majority necessarily holds that the "in furtherance" requirement is meaningless in this case.

For three separate but related reasons, I disagree with the majority's construction of the language of "in furtherance of" in § 53a-54c. First, I would adhere to the general proposition that, in the construction of criminal statutes, we are obligated to prefer an interpretation of statutory language that gives independent meaning to each and every condition on criminal liability that the legislature has chosen to impose. Second, in the construction of this particular statute, I would give greater weight to inferences to be drawn from recent case law in this court than to contrary interpretations of similar legislation in neighboring jurisdictions. Third, I would attach confirmatory significance to the intervening action of the legislature which took pains, in creating a new crime of arson murder, to excise the "in furtherance of" requirement that previously, as in the present proceedings, had accompanied all charges of felony murder. Applying these principles to this case, I cannot agree that "in furtherance of" is meaningless surplusage in § 53a-54c.

Well established rules of statutory construction warn against expansive reading of penal statutes. "A criminal statute must be strictly construed, and no act should be held to be within its ambit which does not fall within its spirit and the fair ambit of its language . . . . The meaning of the statute cannot be extended by presumption or intendment . . . . No part of the statute is to

be treated as insignificant or unnecessary, and there is a presumption of purpose behind every sentence, clause or phrase . . . . It is the expressed intent of the legislature which controls . . . and that intent is to be found in the meaning of what it says . . . . The words used are to be given the commonly approved usage of the language." (Citations omitted.) *State* v. *Moore,* 158 Conn. 461, 465, 262 A.2d 166 (1969). In *State* v. *Grant,* 176 Conn. 17, 20, 404 A.2d 873 (1978), we reiterated that, in construing a criminal statute, this court treats no part of a legislative enactment as insignificant and unnecessary, but endeavors to harmonize the entire statute, so that "each part [may be] made operative." Since § 53a-54c in terms requires the state to prove that death has been caused "in the course of *and* in furtherance of" (emphasis added) the underlying crime, we must endeavor to give independent meaning to each of the elements of the crime with which the defendant has been charged.

There is no apparent disagreement that "in the course of" in § 53a-54c requires the state to show a temporal connection between the death and the underlying felony, and that such proof was introduced in this case. What divides us is a fair meaning, a commonly approved usage for "in furtherance of" as an independent element of felony murder. In approaching this question, I believe that the majority does not give adequate weight to our recent decision in *State* v. *MacFarlane,* 188 Conn. 542, 450 A.2d 374 (1982).

In *State* v. *MacFarlane,* the defendant appealed from a conviction of felony murder that occurred in the course of the commission of a burglary. The state charged that the defendant or his friend had killed the victim when she awoke as they were burglarizing her home. *State* v. *MacFarlane,* supra, 543. The defendant's appeal raised a number of claims of error

unrelated to the present case, but in his third claim the defendant argued that the trial court had erred "in not defining 'in furtherance of [burglary]' as an element of felony murder, and in not including that phrase in its summary to the jury of the felony murder elements." Id., 550–51. In finding no error, we held that "the phrase 'in furtherance of' could properly be considered by the jury in its ordinary meaning." Id., 551–52. In response to the defendant's fourth claim of error, that burglary was not a crime against a person, was unlikely to result in death, and was therefore an inappropriate precondition for a charge of felony murder, we went on to explain "the rationale behind the elements that the death must be caused 'in the course of and in furtherance of' the burglary." Id., 552. That rationale can be found, we stated, as it had been found for a predecessor felony murder statute, by noting that " 'crimes against the person like robbery, rape, common law arson and burglary are, in common experience, likely to involve danger to life in the event of resistance by the victim or the attempt of the perpetrator to make good his escape and conceal his identity.' . . . *State* v. *Rossi,* 132 Conn. 39, 44, 42 A.2d 354 (1945), overruled in part on other grounds, *State* v. *Tomassi,* 137 Conn. 113, 123, 75 A.2d 67 (1950)." (Emphasis omitted.) Id., 553. Accordingly, we found no error in the trial court's instructions relating burglary to felony murder.

*State* v. *MacFarlane* is instructive on several counts. It assigns significance to "in furtherance" by holding that this language is to be given its "ordinary meaning." It describes "in the course of and in furtherance of" as elements, in the plural, of felony murder. It suggests a plausible content for the "ordinary meaning" of "in furtherance of" in the common experience that some crimes, including arson and burglary, are likely

to result in death because of resistance by the victim or the attempt of the perpetrator to escape undetected from the scene of the crime. While this gloss on the felony murder statute compelled affirmance of MacFarlane's conviction, it seems to me to compel acquittal of this defendant. The tragic death of the victim in this case did not occur in circumstances that were, in any ordinary sense, "in furtherance of" the crime of arson.

I do not understand how the majority can dismiss *State* v. *MacFarlane* as inapposite to the present appeal. As I read *MacFarlane,* the opinion directly addressed the meaning of "in furtherance of" in § 53a-54c. This *is* the felony murder statute under which MacFarlane was charged and convicted. Although the *MacFarlane* interpretation of § 53a-54c arose in the context of review of instructions to the jury, that procedural nexus does not, it seems to me, deprive its holding of precedential value. Because *State* v. *MacFarlane* is consistent with our mandate to assign significance, if we can, to each statutory element of a crime, I would follow its holding in preference to that of the New York trial court cases on which the majority relies.

Finally, I believe the majority does not sufficiently take account of revisions of the felony murder statute subsequent to the criminal proceedings in this case. In 1979, the legislature created a separate new crime of arson murder that has been codified as General Statutes § 53a-54d. Under this latter section, a defendant can now be found guilty of murder "when, acting either alone or with one or more other persons, he commits arson and, in the course of such arson, causes the death of a person." Where the new statute applies, the state need no longer prove "in furtherance of." We ordinarily presume, even in civil cases, that statutory changes

reflect intentional modification of existing law. *Heffernan* v. *Slapin,* 182 Conn. 40, 49, 438 A.2d 1 (1980); *Robinson* v. *Unemployment Security Board of Review,* 181 Conn. 1, 21 n.6, 434 A.2d 293 (1980). The presumption strikes me as even more compelling in the amendment of penal statutes where the import of the amendment is to broaden the scope of criminal liability. Such an amendment cannot be justly characterized as merely construing or clarifying a prior penal statute. In my view, the 1979 action of the legislature clearly supports the argument of the defendant that the phrase "in furtherance of" in § 53a-54c should not be dismissed as meaningless surplusage.

I would find error in the defendant's conviction of felony murder.[1]

---

[1] The statutory problems that inhere in the defendant's felony murder conviction in no way affect his conviction of arson in the first degree in violation of General Statutes § 53a-111 (a) (1) and (2). I agree that there is no error with regard to the arson conviction.