[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
I
This dispute arose from an automobile collision occurring on August 24, 1990. On that date, at approximately five p. m., the plaintiff, William Van Eck was operating his 1978 Chrysler New Yorker in a westerly direction on the Quinnipiac Bridge when the vehicle directly in front of him stopped suddenly. William Van Eck braked to avoid collision and was struck from the rear by a vehicle driven by John Antonucci, an insured of the defendant, causing the plaintiff's vehicle to collide with the vehicle directly in front of the plaintiff.
Following this incident, the plaintiffs contacted the defendant. On August 27, 1990, the defendant assigned William Webb, an experienced appraiser, to investigate plaintiff William Van Eck's claim. Webb inspected the plaintiff's vehicle on August 29. 1990. Webb considered defendant's insured to be at fault A Ms. Johnson, a representative of defendant, authorized plaintiff William Van Eck to obtain a rental vehicle pending resolution of plaintiff's claim. Webb prepared a damage assessment, dated August 29, 1990, estimating cost of repair at $1,378.31. Following investigation Webb concluded that the subject vehicle was a total loss, that the cost of repairs would exceed its pre-collision value and that that value was in the amount of one thousand seven hundred twenty dollars and fifty two cents ($1,720.52). The plaintiffs meanwhile had obtained a repair estimate of three thousand one hundred dollars and fifty cents ($3,100.50) and sought agreement by the defendant to pay this cost. The defendant would not agree to pay this amount and by letter dated September 12, 1990 Webb stated defendant's position; the subject vehicle was judged a total loss; that the loss value of the vehicle was $1,714.50, that defendant was willing to pay that amount in settlement of plaintiff's claim with plaintiff to retain possession of the vehicle. The defendant refused to pay the $3,100.50 cost of repair sought by the plaintiffs and notified plaintiff William Van Eck that defendant's car rental authorization terminated as of September 12, 1990.
The parties failed to reach agreement on settlement of plaintiff's claim. On August 27, 1993 the plaintiffs filed Suit directly against the defendant, Nationwide Mutual Insurance Company.
The plaintiffs' complaint is in seven counts; First Count [claim for CT Page 1924 detrimental reliance]; Second Count [claim for fraud re: auto rental]; Third Count [claim for fraud re: auto repair]; Fourth Count [claim for deceit]; Fifth Count [claim for violation of CUTPA, C.G.S. Sec. 42-110(a) et seq.]; Sixth Count [claim for negligence]; Seventh Count [claim for willful and intentional injury].
 II
In the course of these proceedings, the defendants have argued that the plaintiffs have no right of action directly against the defendant, given the requirements of General Statutes, Section 38a-321 and applicable case law, citing Skut v. Hartford Accident and Indemnity Company,142 Conn. 388, 393; "The three requisites of a cause of action under this statute are (1) that the plaintiff has recovered a final judgment; (2) that the judgment is against a person who was insured by the defendant against liability on it; and (3) that the judgment remains unsatisfied." The short answer is that the plaintiffs are not suing the defendant for recovery under its policy with Mr. Antonucci. Rather, the plaintiffs are alleging misconduct by the defendant in its conduct of settlement negotiations with the plaintiffs.
The defendant also urges this court to summarily dismiss plaintiffs' Third Count, which alleges violations by defendant of the Connecticut Unfair Trade Practices Act ("CUTPA"), General Statutes, Sections 42-110a
et seq., citing Mead v. Burns, 199 Conn., 667. Specifically, defendant argues that plaintiffs failed to allege that the defendant had committed the alleged wrongful acts with such frequency as to constitute a general business practice.
General Statutes, Chapter 704, the Connecticut Unfair Insurance Practice Act ("CUIPA") prohibits any person engaged in the business of insurance in Connecticut from engaging in an unfair method of competition or an unfair or deceptive act or practice. Included in the unfair practices defined by statute are unfair claim settlement practices, General Statutes, Section 38a-816(6). Although plaintiffs nowhere explicitly alleged violation by defendant of CUIPA, its is clear that plaintiffs' complaint alleges unfair claim settlement practices by defendant. A litigant complaining of unfair trade practices is entitled to maintain a private right of action under CUTPA for alleged unfair trade practices under General Statutes Section 38a-816, Griswold v. Union Labor Life Ins. Co.,186 Conn. 507; Mead v. Burns, 191 Conn. 651, 665. It is possible to state a cause of action under CUTPA, for a violation of CUIPA, Mead v. Burns,
supra, at 663, but a plaintiff alleging unfair claim settlement practices by an insurer must establish that said insurer engaged in such practices "with such frequency as to indicate a general business practice", Mead v.CT Page 1925Burns, supra, 663, 664. Two or more unfair claim settlement practices in relation to only one insurance claim, without any evidence of misconduct by the defendant in the processing of any other claim, does not rise to the level of a "general business practice" as required by S. 38a-816(6), Leesv. Middlesex Ins. Co., 229 Conn. 842, 848, 849. As plaintiffs introduced no evidence to establish unfair practices in settlement of any claim other than that of plaintiff William Van Eck, they cannot prevail on this CUTPA claim.
Even assuming plaintiffs could somehow raise a CUTPA claim of unfair trade practices by the defendant insurance company independent of CUIPA, plaintiffs failed to establish, by a fair preponderance of the evidence, that defendant Nationwide engaged in unfair trade practices in violation of General Statutes Sections 42-110a et seq., utilizing CUTPA standards alone.
The court finds the defendant made a good faith effort to settle the claim at issue. The plaintiffs have failed to establish that defendant engaged in any unfair or deceptive act or practice in its settlement negotiations with the plaintiff, neither with regard to car repair or car rental.
With regard to Count Six the defendant argues that there is no factual or legal basis for this claim and that the allegations of this count do not constitute a cognizable cause of action. The court agrees with the defendant. Count Six, accordingly, is dismissed.
 III
As indicated, supra, the plaintiffs are seeking a judgment against the defendant based on alleged misconduct by the defendant through its agents in the course of settlement negotiations. At issue are the words and acts of the parties relating to settlement of plaintiff William Van Eck's claim in the period August 27 through September 12, 1990. Plaintiff's First, Second, Third, Fourth, Fifth and Seventh Counts each have as their basis alleged assurances made to plaintiffs by agents of the defendant.
Plaintiffs claim that defendant's agent Webb assured them that, "Nationwide is on your side"; assured them that Nationwide would make them whole; that Nationwide assumed sole responsibility for all financial losses incurred by the plaintiffs; assured them that Nationwide would pay the cost to repair the subject vehicle; and authorized the plaintiff, William Van Eck to rent a replacement vehicle pending completion of repair. These assertions were allegedly made by Webb "in the course of the first week of September, 1990", in telephone conversation with plaintiff Jan Van CT Page 1926 Eck.
Defendant's agent, Mr. Webb, testified he stated to plaintiffs his belief that defendant's insured was at fault in the said collision; that defendant's agent Ms. Johnson had authorized plaintiff William Van Eck to rent a car at defendant's expense at the rate of $18.95 per day plus tax. He denied making the other statements alleged. Rather, he testified that he told plaintiff William Van Eck that the vehicle was a total loss, that the vehicle had no salvage value; after investigation Webb estimated the pre-collision value of plaintiff's vehicle at $1,714.50, with plaintiff free to keep the vehicle. Evidence introduced at trial lends support to Webb's testimony. A total loss evaluation produced by Certified Collateral Corporation at Webb's request bears the date 8/29/90 (Defendant's Exhibit No. 2); The damage assessment (Defendant's Exhibit No. 1) prepared by Webb on August 29, 1990 bore the notation: "THIS IS AN ESTIMATEONLY AND NOT AN AUTHORIZATION TO REPAIR. ADDITIONAL PAYMENTWILL BE MADE ONLY WITH APPROVAL PRIOR TO REPAIR". Webb's
September 12, 1990 letter to plaintiff (Defendant's Exhibit No. 5) makes reference to conversation between Webb and plaintiff Jan Van Eck on September 5, 1990, in which Webb informed him that the subject vehicle was "beyond economical repair" and total loss value was $1,714.50. The court finds Webb's testimony regarding settlement negotiations more credible than that of plaintiffs. In particular, the court is not persuaded that Webb, a veteran appraiser and claims adjuster, would commit his employer to assume repair costs of a damaged vehicle without limitation, or in excess of the vehicle's pre-collision value. The court concludes that prior to September 12, 1990 plaintiffs had been made aware of defendant's position with regard to the plaintiff, William Van Eck's, claim; vehicle deemed a total loss, beyond economic repair; vehicle's value $1,714.50; defendant will not pay plaintiff's repair estimate of $3,100.50; defendant will pay $1,714.50 in settlement of the claim, with plaintiff to keep the subject vehicle; defendant's authorization of car rental to cease on September 12, 1990.
The court finds that the plaintiffs have failed to establish, by a fair preponderance of the evidence, that defendant entered into a contract, express or implied, with either or both of the plaintiffs, whereby defendant obligated itself to assume all costs of repair to the subject vehicle, whatever such costs might be; nor did defendant obligate itself to pay costs of repair in excess of the vehicle's pre-collision value.
The plaintiffs have failed to establish, by a fair preponderance of the evidence, the factual basis for the various causes of action delineated by count in their Complaint. Accordingly, as to plaintiffs' Second Count [Claim for fraud re: auto rental], Third Count [Claim for CT Page 1927 fraud re: auto repair], Fourth Count [Claim for deceit], and Seventh Count [claim for willful and intentional injury] the plaintiffs have failed to establish by requisite standards of proof, fraud, deceit, or willful and intentional injury by the defendant toward the plaintiffs.
 IV
Based on testimony and evidence presented the court makes the following findings with reference to the remaining count of plaintiffs' revised complaint:
First Count [Claim for detrimental reliance]: This count encompasses two claims; first that relying on promises of defendant's agent Webb, plaintiff William Van Eck incurred expenses for car rental in the amount of $533.52. There is no disagreement between the parties that defendant' agents authorized William Van Eck to rent a vehicle from August 27, 1990 through September 12, 1990. The defendant's agent Webb testified as to his belief that this promise by defendant was binding on the defendant. Although defendant claimed that its promise was limited in the amount of $18.95 per day, plus tax, defendant offered no documentary support for this claim. Further, although defendant claimed plaintiff William Van Eck refused its offer of payment, it produced no documentation to support that claim. Under the doctrine of promissory estoppel a gratuitous promise, made without consideration, may be enforced when a promisee relies on said promise to his detriment. See Restatement 2d, Contracts, Section 90. The court finds that defendant's promise to pay for plaintiff William Van Eck's car rental is enforceable under this doctrine. Accordingly, the court accepts the plaintiffs' figure of $533.52 as reasonable rental expense for the period August 27, 1990 through September 12, 1990. The court finds defendant was free to cancel such authorization at any time after notice to plaintiff, William Van Eck.
The second claim of the First Count is that plaintiff Jan Van Eck, relying on representations of Webb, proceeded to contract with his father to purchase the subject vehicle, solicit and obtain parts and repair cost estimates, placed said vehicle for repair and "incurred expenses therein". This claim is the sole basis for plaintiff Jan Van Eck's presence as a plaintiff in this matter. The court notes that the purported contract between the plaintiffs was not supported by any documentary evidence. Jan Van Eck testified that he purchased the vehicle from his father some three weeks after the collision. Since the plaintiffs had been made aware of the defendant's position regarding settlement well before the expiration of said three week period it would not have been reasonable for Jan Van Eck to rely on any alleged representations of Mr. Webb regarding defendant's assumption of repair cost at the time he entered into the CT Page 1928 contract with his father.
Jan Van Eck testified that, pursuant to this contract, his father had assigned all his rights in the vehicle, including any claim for damages arising out of the collision of August 24, 1990 to him, Jan. Such an assignment would create no rights in Jan Van Eck, vis a vis defendant, other than those previously belonging to his father. Plaintiffs have failed to establish, by a fair preponderance of the evidence, such assignment of rights by father to son; failed to establish that defendant breached any duty to plaintiff Jan Van Eck; nor that defendant owed any duty to Jan Van Eck; failed, to establish that representations of defendant induced Jan Van Eck to enter into a contract with William Van Eck for the purchase and sale of the subject motor vehicle; and failed to establish defendant's liability for any losses suffered by Jan Van Eck stemming from said contract.
Accordingly, judgment may enter for the defendant as to the Second, Third, Fourth, Fifth and Seventh Counts of the Complaint.
As to the First Count, judgment may enter for the plaintiff, William Van Eck only, in the amount of Five hundred thirty three dollars and fifty two cents ($533.52), plus interest as provided by Statute (General Statutes, Section 37-3a) from August 27, 1990 to the date of this decision.
John T. Downey Judge of the Superior Court